UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 FEB -1  AM II: 35

DEPUTY CLERK_____

LINDA DIANE BRASWELL,          )
                               )
        Plaintiff,             )
                               )
v.                             )    CIVIL ACTION NO.
                               )    5:16-CV-033-BQ
NANCY A. BERRYHILL,            )    ECF
Acting Commissioner of Social Security,  )
                               )
        Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff Linda Diane Braswell seeks judicial review under 42 U.S.C. § 405(g) for a decision by the Commissioner of Social Security denying her applications for disability insurance benefits and disabled widow's benefits. The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. The parties did not consent to jurisdiction by the magistrate judge. In accordance with the order of transfer, the undersigned now files this Report and recommends that the United States District Court affirm the Commissioner's decision and dismiss Braswell's Complaint with prejudice.

## I.    Statement of the Case

On April 8, 2015, Braswell and a vocational expert testified in a hearing before an administrative law judge (ALJ). Tr. 45. Counsel represented Braswell at the hearing. *Id.* The ALJ determined on July 17, 2015, that Braswell was not disabled because she could perform work existing in significant numbers in the national economy. Tr. 37–38. The Appeals Council denied review on January 19, 2016. Tr. 1. As a result of this denial, the ALJ's decision became the Commissioner's final decision and is therefore properly before the court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005)

1

(holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II.   Facts

Braswell filed an application for disability insurance benefits (DIB) on November 18, 2013, alleging a disability onset date of March 2, 2013. Tr. 77, 101, 194. On May 19, 2014, she filed an application for Disabled Widow's Benefits (DWB), alleging the same disability onset date. Tr. 198. Braswell alleges her ability to work is greatly limited by depression, anxiety, post-traumatic stress disorder (PTSD), chronic migraines, fibromyalgia, knee pain, hypertension, feet and ankle swelling, and obesity. Tr. 77, 101. After graduating from high school, Braswell worked as a customer service representative, personnel clerk, employment clerk, and cashier. Tr. 36, 46, 66–71, 244–49. She lives alone, and receives assistance from either family members or people she pays for performing some household chores, personal care, and grocery shopping. Tr. 54–56, 59, 252. Braswell testified at the administrative hearing that, although she can drive, she has not driven in months and her eighty-year-old mother drives her to doctors' appointments. Tr. 55.

## III.   Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Without reweighing the evidence or substituting its own judgment, a reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.

1990). If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g) (2016); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

## IV.   <u>Discussion</u>

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2016); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If a disability determination is made at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis. *Id.* Once satisfied, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden ultimately shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

In this case, the ALJ determined: (1) Braswell had not engaged in substantial gainful activity since the alleged disability onset date; (2) Braswell had severe impairments of obstructive

3

sleep apnea, hypertension, deep venous thrombosis of the right lower extremity, a history of migraine headaches, hepatitis C with a history of iron deficiency anemia, morbid obesity, status-post gastric bypass surgery with intestinal malabsorption, degenerative changes of the left knee, rheumatoid arthritis, a history of fibromyalgia, major depressive disorder, PTSD, and panic disorder; and (3) Braswell did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14–21. Following step three, the ALJ assessed Braswell's residual functional capacity (RFC) and found that she had the RFC to perform sedentary work with the following abilities and restrictions: Lift and carry ten pounds occasionally and five pounds frequently; sit six hours in an eight-hour workday; stand and walk two hours in an eight-hour workday; no climbing ladders, scaffolds, or ropes; only occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no work around hazards such as dangerous moving machinery or unprotected heights; she could perform jobs involving detailed, but not complex, job tasks; and she could have only occasional face-to-face contact with the public. Tr. 21–22. The ALJ determined Braswell could work full-time at this RFC on a sustained basis and she could maintain that employment indefinitely. Tr. 22. After considering testimony from a vocational expert as well as Braswell's age, education, work experience, and RFC, the ALJ concluded at step five—using the Medical-Vocation Guidelines as a framework, 20 C.F.R. Part 404, Subpart P, Appendix 2—that Braswell was not disabled because she could perform jobs existing in significant numbers in the national economy. Tr. 37.

Braswell argues on appeal that the ALJ erred by: (1) replacing a treating physician's opinion with his own lay opinion; and (2) posing a defective hypothetical question to the vocational expert. Pl.'s Br. 14, 17 (ECF No. 14).

4

**A.  Braswell has not demonstrated any prejudicial error in the ALJ's decision to give little or no weight to the treating physician's GAF assessment.**

Braswell alleges the ALJ erred by improperly disregarding the medical opinion of her treating psychiatrist, Arun Patel, M.D., and substituting his own lay opinion in its stead. Pl.'s Br., at 14–17. On June 19, 2013, Dr. Patel diagnosed Braswell with dysthymia, severe major depression, and severe generalized anxiety disorder, while ruling out borderline personality disorder. Tr. 15, 433. Dr. Patel assigned her a Global Assessment of Functioning (GAF) score of 45, meaning that Braswell had serious mental illness symptoms or impairments.[1] The ALJ gave little weight to this score, however, because it was inconsistent with the mental status examination findings of Dr. Patel and other treating and examining physicians. Tr. 15.

Braswell contends that the ALJ decided to "play doctor" by rejecting Dr. Patel's GAF score, and substituting his own medical judgment. Pl.'s Br., at 16 (citing *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). The ALJ did, however, find that Braswell had many severe impairments, including major depressive disorder, PTSD, and panic disorder. Tr. 14. Other than arguing that the ALJ erred by replacing Dr. Patel's opinion with his own and that "Ms. Braswell's medical evidence establishes that she has 'severe' impairments under this Act," Braswell has not shown how the ALJ's purported error prejudiced her. Stated alternatively, despite the ALJ deciding at step two to not give any significant weight to Dr. Patel's GAF assessment, he still ultimately determined that Braswell had severe mental impairments, and Braswell has not

---

[1] The GAF Scale considers the psychological, social, and occupational functioning of an individual to assign an overall psychological functioning score in "global terms." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (DSM-IV). As noted in Plaintiff's Brief, the American Psychiatric Association dropped the GAF Scale in favor of the World Health Organization Disability Assessment Schedule (WHODAS) 2.0. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013) (DSM-5). Nevertheless, because Braswell's treating and examining physicians and the ALJ cited the GAF Scale, the court similarly considers its application to the "not disabled" finding.

demonstrated how the ALJ's decision prejudicially altered his opinion either at step two or at any other part of the five step analysis. *See Murrell v. Colvin*, No. 3:12-CV-3757-G (BN), 2013 WL 4623549, at *5 (N.D. Tex. Aug. 29, 2013) (holding that a district court cannot remand a social security case to the ALJ if the plaintiff fails to show prejudicial error). Because Braswell has not shown, or even argued, prejudicial error, her request for reversal or remand because the ALJ improperly replaced a treating physician's opinion with his own lay opinion should be denied.

**B.    Even assuming error in the ALJ's consideration of Braswell's GAF score, substantial evidence supports the ALJ's decision, and any alleged error was harmless.**

Even assuming the ALJ's decision to give little weight to the GAF score was error, Braswell's appeal on this claim should still be denied because substantial evidence in the record supports the ALJ's decision. The parties disagree whether a GAF score is a medical opinion[2] regarding any specific limitations caused by a claimant's mental impairments, or merely a tool used by practitioners. The Commissioner argues that Braswell's reliance on the GAF score is misplaced because GAF scores are not medical opinions (Def.'s Resp., at 3),[3] while Braswell claims the ALJ rejected a treating physician's medical opinion, e.g., GAF score, and substituted his own. Pl.'s Br., at 16. This issue is not settled in the Northern District of Texas. *Compare Escovedo v. Colvin*, No. 1:12-CV-041-BL, 2013 WL 1915051, at *5 (N.D. Tex. May 9, 2013) (holding that a GAF score "in and of itself does not represent a medical opinion"), *with Jackson v. Colvin*, No. 4:14-CV-756-A, 2015 WL 7681262, at *2–5 (N.D. Tex. Nov. 5, 2015), *rec. adopted,*

---

[2] The Social Security Administration regulations require an ALJ to evaluate all medical opinions in the record. 20 C.F.R. § 404.1527(c).

[3] The Commissioner further alleges that "GAF scores have a limited significance in a disability controversy," and a "GAF score does not necessarily relate to whether a claimant is disabled under the Act." Def.'s Resp., at 3 (ECF No. 15); *see also Murdock v. Astrue*, No. 4:09-CV-327-Y, 2010 WL 3448084, at *8 (N.D. Tex. Aug. 3, 2010), *rec. adopted,* 2010 WL 3448080 (N.D. Tex. Sept. 1, 2010) (noting that the Commissioner and federal courts "have declined to find a correlation between an individual's GAF score and the ability or inability to work").

2015 WL 7582339 (N.D. Tex. Nov. 25, 2015) (construing a GAF score as medical opinion evidence).

Under the facts of this case, the court views the issue as a distinction without a difference, and the outcome is the same regardless of which construction is applied. If the GAF score does not constitute a medical opinion, the ALJ has no duty to consider it and the ALJ's decision to give little weight to Dr. Patel's GAF assessment is not erroneous. If the GAF score represents a treating physician's medical opinion, substantial evidence (primarily in the form of treatment records from Dr. Patel and other treating and examining physicians) nevertheless supports the ALJ's decision to give little or no weight to the GAF assessment,. *See Jackson*, 2015 WL 7681262, at *3 (holding that "[e]ven if an ALJ mischaracterizes what a GAF score represents, any error is harmless so long as there is other substantial evidence in the record supporting the ALJ's determination and it is clear that said error did not alter the result").

The Commissioner's regulations addressing the weight the ALJ should give to a treating physician's opinion on the nature and severity of an impairment does not require a different result. Generally, a treating physician's opinion on the "issue(s) of the nature and severity" of a claimant's impairments that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record will have "controlling weight" in the disability determination (20 C.F.R. § 404.1527(c)(2)), and an ALJ must have "good reasons" to give little or no weight to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c) (listing factors ALJ must consider in giving no weight to treating physician's opinion); *Newton*, 209 F.3d at 456. An ALJ, however, is "not required to consider the § 404.1527(c) factors before dismissing a treating physician's opinion if there is competing first-hand medical evidence contradicting that opinion." *Jones v. Colvin*, 638 F. App'x 300, 304 (5th

Cir. 2016); *see also Hamilton-Provost v. Colvin*, 605 F. App'x 233, 240 (5th Cir. 2015) (holding

that the ALJ is not required to consider the § 404.1527(c) factors when the treating physician's

opinion was "controverted by evidence from other examining and treating physicians"). Here, the

ALJ thoroughly considered the entire record—including all of Dr. Patel's records of Braswell's

treatment—to support his decision not to give great weight to Dr. Patel's GAF assessment, even if

it constitutes his medical opinion. Specifically, the ALJ considered the following evidence:

On February 11, 2013, Texas Tech Physicians of Lubbock treated Braswell for migraine

headaches. Tr. 286. She presented with no anxiety or depression, and was alert, oriented, and

cooperative. Tr. 287–88.

On June 19, 2013, Dr. Patel treated Braswell for severe depression and anxiety. Tr. 431.

On that date, he diagnosed her with dysthymia, severe recurrent major depression, and severe

generalized anxiety disorder, while ruling out borderline personality disorder, and assigning her a

GAF score of 45. Tr. 433.

One week later, on June 26, 2013, Braswell underwent a psychological assessment at

Lighthouse Behavioral Health (LBH) by Patrick D. Randolph, M.D. Tr. 473–76. Dr. Randolph

diagnosed her with severe major depressive disorder without psychotic features, PTSD, and panic

disorder with agoraphobia. Tr. 16, 475. He determined her GAF score to be 55. *Id.*

On October 21, 2013, Dr. Patel opined that Braswell was "overall much improved" and

noted that she was alert, oriented, nonpsychotic, not dangerous, with adequate insight, good eye

contact, and good judgment capacity, and that her affect was constricted but she smiled when

humored. Tr. 430. On November 27, 2013, Dr. Patel assessed Braswell with anxiety and

depression and observed that she was "somewhat depressed, anxious, [with] ruminating mood,

speech and thought processes." Tr. 429.

Licensed Professional Counselor Kaylene Brown, Ph.D., also treated Braswell at LBH for her mental impairments. In treatment notes from December 13 and 17, 2013, Dr. Brown observed that Braswell was anxious and depressed due to family issues, but that her perceptual processes were normal. Tr. 471–72. On February 4, 2014, Dr. Brown noted that Braswell was still depressed and anxious over family issues, but was also friendly and cooperative with normal perceptual processes and logical thought processes. Tr. 470. Dr. Brown considered Braswell to be "much improved." *Id.*

On January 10, 2014, David Syn, M.D., diagnosed Braswell with anxiety and depression, but observed that she was "pleasant and cooperative" and alert and oriented. Tr. 510.

On February 4, 2014, Braswell went to the University Medical Center (UMC) emergency room for right leg swelling. Tr. 364. There, the physician documented that she was depressed, but with no anxiety, and was alert, oriented, and cooperative. Tr. 364, 366, 369.

On February 20, 2014, Braswell reported to Dr. Patel that her psychotropic medications "have worked well" and that while she has "occasional symptoms of anxiety," she is overall "coping well." Tr. 428. On March 4, 2014, however, Braswell requested that Dr. Patel change her medications, believing different medications would be better. Tr. 427. Dr. Patel noted that her mood was somewhat irritable, and Braswell was occasionally anxious and mildly depressed. *Id.* On March 25, 2014, she told Dr. Patel that her new medication combination was "much better" and Dr. Patel assessed her as "[m]uch improved" and "significantly better." Tr. 426.

Dr. Brown's treatment notes from April 8, May 6, and May 27, 2014, indicate that Braswell was anxious and depressed, with guilt, obsessions, and circumstantial/tangential thought processes. Tr. 466–68. He also documented, however, that Braswell was cooperative and friendly with normal perceptual processes during those treatment sessions. *Id.*

9

On April 22, 2014, Dr. Patel assessed Braswell with persistent depression and anxiety, but stated that "psychiatrically she seems to be doing better" and while she was still anxious and depressed, she was overall "coping better." Tr. 605. He also noted she had "no dangerous ideations, symptoms of mania or psychosis." *Id.* On September 9, 2014, Braswell presented to Dr. Patel complaining of anxiety, rumination, mild depression, and dysthymia feelings. Tr. 604. She denied suicidal thoughts, had no symptoms of mania or psychosis; Dr. Patel assessed her with anxiety. *Id.* On November 17, 2014, Dr. Patel diagnosed Braswell with moderate to severe anxiety and moderate depression. Tr. 603. He observed that her mood remained moderately depressed and moderately to severely anxious, but that she had no symptoms of psychosis or mania and denied having thoughts of harming herself or others. *Id.*

In treatment notes from August through October 2014, Dr. Brown continued to treat Braswell for the problems she was having with her family. Tr. 19, 477–80. Her response to treatment was positive and she was friendly and cooperative. Tr. 478–80. She did not have any suicidal or homicidal ideations. *Id.* On September 4, 2014, Dr. Brown did not assess Braswell's mood as anxious or depressed. Tr. 479. On January 15, 2015, Dr. Brown observed that Braswell was friendly and cooperative with appropriate affect, but had obsessions, worries, and illogical thought processes. Tr. 631. Braswell did not have an anxious or depressed mood on that date. *Id.*

In an "emergency appointment" for insomnia and anxiety on December 5, 2014, Dr. Patel diagnosed Braswell with severe anxiety, insomnia, and moderate depression. Tr. 602. Her mood was moderately to severely anxious and moderately depressed, but she had no psychosis, mania, or dangerous ideations. *Id.* Dr. Patel adjusted Braswell's medications. *Id.* On December 19, 2014, Dr. Patel noted that Braswell was doing better after the medication change and assessed her as "anxious and dysphoric overall but better compared to last visit and coping somewhat better . .

10

. . ." Tr. 601. Braswell was alert and oriented, with moderate anxiety, mild to moderate depression, but with good judgment capacity and adequate insight. *Id.*

On January 16, 2015, Dr. Patel diagnosed Braswell with anxiety and depression, and noted that she had an anxious and depressed mood with a constricted, anxious, and sad affect. Tr. 633. On March 13, 2015, Braswell complained of low energy and depression, but with no dangerous ideations and no symptoms of mania or psychosis. Tr. 635. Dr. Patel assessed her to have depression and apathy. *Id.* On April 20, 2015, Dr. Patel diagnosed Braswell with moderate depression, moderate anxiety, high apathy, and self-esteem issues. Tr. 690. Braswell did not have symptoms of psychosis or dangerous ideations. *Id.*

Thus, considering the entire record, the ALJ's decision to grant little weight to Dr. Patel's GAF assessment of 45 is supported by substantial evidence. An individual with a GAF score between 41 and 50 has serious symptoms (e.g., suicidal ideation, severe obsessional rituals, occasional panic attacks) or moderate difficulty in social, occupation, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV, at 32. The ALJ noted that "[a]lthough there was a period of time where Ms. Braswell's anxiety was characterized as moderately severe, the overall treatment records from Dr. Patel, Dr. Brown of LBH, and the other sources indicate Ms. Braswell's anxiety and depression have been moderate or less in severity." Tr. 21. The ALJ's thorough step two determination is supported by substantial evidence.

Additionally, even if the ALJ erred by giving little weight to Dr. Patel's GAF assessment, any such error is harmless. The ALJ accounted for Braswell's mental limitations in finding that she had severe impairments of major depressive disorder, PTSD, and panic disorder. Tr. 14. In determining Braswell's RFC, the ALJ limited her to jobs with detailed, but not complex, job tasks and to only occasional face-to-face contact with the public. Tr. 22. Braswell has not argued, and

11

the court cannot find, how giving greater weight to Dr. Patel's GAF assessment would have changed the ALJ's analysis.   Thus, Braswell suffered no prejudice and the undersigned recommends that this point of error be denied.

**C.     The ALJ did not pose a defective hypothetical question to the vocational expert, and any alleged error was harmless.**

Braswell also contends that the hypothetical question the ALJ posed to the vocational expert (VE) was defective because it did not incorporate all of her mental impairments. Pl.'s Br., at 17–20. Specifically, she argues there is insufficient evidence in her treatment records to support a hypothetical question where Braswell could perform detailed, but not complex, tasks. *Id.* at 20. Braswell's characterization of the hypothetical question, however, is incorrect.   In the ALJ's hypothetical question, he asked the VE to consider a person who could perform "*no* detailed or complex job tasks." Tr. 72 (emphasis added).   Considering that limitation, the VE testified that such a person could work as a personnel clerk, data entry clerk, clerk typist, clerical checker, and data checker. Tr. 72–73.

The ALJ's hypothetical question must reasonably incorporate all the claimant's recognized disabilities. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).   Ultimately, the ALJ determined after step three that Braswell had the RFC to perform detailed, but not complex tasks.   Tr. 22. Thus, the ALJ's hypothetical question at step five that included the limitation of "no detailed or complex job tasks" actually included greater limitations than that required by Braswell's RFC.

Braswell does not argue that the ALJ's RFC determination was erroneous.   Nevertheless, because the ALJ's RFC determination did limit Braswell to detailed, but not complex, tasks, assuming, *arguendo*, that he included this limitation in the hypothetical question, any error would be harmless because the RFC determination is supported by substantial evidence.   The ALJ thoroughly considered Braswell's medical history and her subjective testimony to determine that

12

Braswell had moderate limitations in concentration, persistence, and pace which limited her job performance to detailed, but not complex, tasks. *See* Tr. 30–36. By merely stating the unsupported conclusions that "Ms. Braswell does not have the capacity to understand, remember and carry out detailed instructions" and that "she would be incapable of even performing simple work related activities on a sustained basis" (Pl.'s Br., at 19–20), Braswell has not shown that the ALJ's RFC determination was not supported by substantial evidence. *See Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) ("'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'").

The ALJ did not pose a defective hypothetical question, and substantial evidence in the record supports the ALJ's RFC determination. Thus, the undersigned recommends this point of error be denied and the ALJ's decision be affirmed.

## V.     **Recommendation**

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Braswell's Complaint with prejudice.

## VI.     **Right to Object**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing

before the magistrate judge is not specific.   Failure to file specific written objections will bar the

aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge

that are accepted or adopted by the district court, except upon grounds of plain error.   *See Douglass*

*v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: February ____, 2017

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**